[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Brazen and baffling best describe the husband's actions in this case. Within weeks after the birth of their second child, he left his wife, flew to Bermuda, and became engaged to another woman. Within the same period of time, while allegedly in financial distress, he purchased a $4,000.00 engagement ring for his new "fiancee", a $6,000.00 Rolex watch for himself, and paid $4,000.00 for the one week trip for both of them.
The parties were married on October 21, 1995, in Waterbury, a total of just seven years. The complaint filed by the wife claims a dissolution of marriage, custody, alimony, child support, attorney's fees, a transfer of the marital residence, and other relief. The parties, including the husband, who did not file an answer or cross complaint, were represented by competent counsel, and fully heard on all issues over two days of trial.
The wife, who is 33 years old, is in good health, and well educated with associate, bachelor, and masters degrees. She is a teacher for the Waterbury Board of Education where she earns $56,472.00 per year.
The husband is 35 years old, in good health, and attended one and one-half years of college. He has a home improvement contractor's license from the State of Connecticut and operates a paint contracting business under that license. At various times, he employed up to seven individuals, although, as a result of the economic downturn, he now has no employees. There is seasonality to the work with winter being the slowest time. Some personal expenses are paid by the business including country club charges of nearly $6,000.00 per year. After considering all the testimony and a review of the exhibits, it would be fair to assign him an income capacity of $52,000.00 per year.
Two children were born to the wife during the marriage, Carrington, born April 2, 1998 and Jacob, born May 27, 2001. Both are in good health and are cared for primarily by the wife. She is fortunate that her CT Page 471 parents provide child care saving her the necessity of placing the children in day care during her working hours. It also saves the substantial weekly expense which both parties would have had to share pursuant to the guidelines.
Neither party had any significant assets which they brought to the marriage. However, from time to time during the marriage, the parties did receive gifts and other assistance from the wife's family. For her, said assistance continues to this day.
The most significant asset owned by the parties is the marital residence, occupied by the wife and children, which the parties stipulated has an equity of $99,784.00. There is also a Treasure Island, Florida time share, originally gifted to the husband by his grandmother but later upgraded to a larger unit by the parties, with an approximate value of $7,000.00.
The wife has a 2002 Chevrolet purchased with a loan from her uncle which has no equity, and the husband an inoperable 1988 Cadillac with an equity of $1,800.00. It is significant to note that the husband operates a company vehicle for which all expenses are paid by the business. Further, the husband leased, through the business, a 2002 Chevrolet Trailblazer for his "fiancee" at a cost of approximately $500.00 per month.
 Dana Painting Contractors, LLC, the husband's business, is actually owned 90% by the wife. It was set up in that manner to qualify for minority contracts. In reality, it is owned and operated solely by the husband who listed its fair market value as $3,000.00 on his financial affidavit.
Other assets include personal bank accounts of both parties which contain only nominal balances, the wife's mutual funds listed at $1,763.00, the wife's un-vested State of Connecticut pension with no value, and two IRA accounts owned by the husband with a stated value of $7,489.00. The children have some modest assets in their own name, most of which are in the possession of the wife and will not be distributed by the court.
As to liabilities, the wife listed People's Visa at $3,800.00, a student loan of $1,197.00, and a loan from her parents at $12,000 (legal fees and living expenses), for a total of $16,997.00. A car loan from her uncle in the amount of $25,000.00 is not included in the total liabilities because it was netted out of the equity in her 2002 Chevrolet. The husband listed a total of $43,789.00 in liabilities as CT Page 472 follows: Amex $7,000.00, Visa PGA $2,800.00, Visa Capital $6,900.00, loan from mother $3,500.00, Visa Fleet $4,800.00, Amex (joint) $4,900.00, Lowes $850.00, Visa Webster $3,700.00, Visa Sears $1,300.00, Household Finance $5,200.00, and lawyer's fees $2,839.00.
Also of note is the fact that the husband has obligated himself on a $900.00 per month lease of a six-room house occupied by him and his "fiancee" and his children when they visit. The "fiancee's" only contribution to the expenses of the household is $50.00 per week for food and $100.00 per month for spring water.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. The wife alleged that the husband's infidelity and refusal to attend counseling was the principal cause. The husband, who acknowledged the infidelity and his bad timing, alleged that the wife's poor relationship with his mother and son from a previous relationship as causes. While there are two sides to every breakdown, and perceptions vary, suffice it to say that the wife's claims were clearly more credible.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
The parties shall have joint legal custody of the minor children with primary residence to the wife. The husband shall have visitation with the children every Tuesday, Thursday, and Saturday. Gradually, on a monthly basis, the children shall be introduced to overnight visitation so that by June 2003 they will be having overnight, weekend visitation with the husband to coincide with the visitation of their half-sibling. In calendar year 2003 the major holidays, Easter, Thanksgiving, and Christmas, shall be shared. Commencing in 2004, the holidays shall be alternated. In July or August 2003, the husband shall have one week of vacation with the children. Thereafter, he shall have two non-consecutive weeks of vacation upon 60 days notice. In the event of a dispute over CT Page 473 times or any aspect of this visitation order, the parties are to seek mediation with the Family Services Unit of the court. If mediation is unsuccessful, they are to bring the matter to the court for resolution.
CHILD SUPPORT
The husband shall pay to the wife child support in the amount of $165.00 per week in accordance with the child support guidelines.
Either party shall have the right to petition the court for a post-judgment educational support order pursuant to statute.
LIFE INSURANCE
The husband shall name the minor children beneficiaries of his $300,000.00 Prudential Life Insurance policy. At his option, he may add his son from a prior relationship, as a coequal beneficiary. Upon reasonable request, he shall give the wife satisfactory evidence that he is insured in the proper amount.
The wife shall name the minor children beneficiaries on any group life insurance she might have available to her at her place of employment. Upon reasonable request, she shall give the husband satisfactory evidence of the status of such insurance.
The wife shall maintain the minor children as beneficiaries on the medical insurance she now has in force through her place of employment. Un-reimbursed medical and dental expenses are to be equally shared by the parties.
REAL ESTATE
The husband shall quit-claim to the wife all of his right, tide, and interest in the property located at 35 Stanley Street in Wolcott, subject to the outstanding mortgage which she shall assume saving the husband harmless from any and all claims regarding same. Within one year from date, the wife shall cause the husband's name to be removed from the mortgage obligation. In the event she is unable or unwilling to do so, the property is to be immediately listed for sale and sold to the first buyer with a reasonable offer.
The husband shall retain the Florida time share.
ALIMONY
CT Page 474
The husband shall pay to the wife alimony in the amount of $60.00 per week until the first of the following events: death of either party, the wife's remarriage, her cohabitation, or June 30, 2006.
PERSONAL PROPERTY
Each party shall retain the furniture, furnishings, jewelry, and other personal property in their respective possession without claim from the other.
The husband shall retain his 1988 Cadillac and the wife her 2002 Chevrolet automobiles subject to any outstanding loans encumbering said vehicles.
The wife shall transfer to the husband any and all interest she might have in the business known as Dana Painting Contractors, LLC. The husband shall take immediate steps to remove the wife's name from any aspect of the business, and shall be solely responsible for any and all liabilities of said business saving the wife harmless from any such obligations.
The wife shall retain the Waterbury Teachers Credit Union joint checking and savings account and shall cause the husband's name to be removed therefrom.
The husband shall retain the American Bank joint savings account and shall cause the wife's name to be removed therefrom. The wife shall retain the Merrill Lynch and W R Science and Tech mutual funds.
Each party shall remain custodian of the various bonds and savings accounts held for the children. Upon reasonable request, each party shall furnish satisfactory evidence that said investments are being properly maintained.
RETIREMENT ASSETS
The wife shall retain any pensions or retirement benefits she might have, whether accrued or not, with the State of Connecticut or the City of Waterbury.
The husband shall retain his Prudential Roth and SEP IRA benefits.
LIABILITIES
Each party shall be solely responsible for the liabilities shown on their respective financial affidavits saving the other harmless from any CT Page 475 and all claims regarding same.
The GMAC bill shall be the sole obligation of the husband.
COUNSEL FEES
The husband shall pay to the wife counsel fees in the amount of $1,500.00 at the rate of $300.00 per month commencing May 1, 2003 until fully paid.
TAXES
The parties shall alternate taking each of the children as exemptions on their respective state and federal tax returns. For calendar year 2002, The wife shall claim the child Jacob and the husband Carrington.
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
Plaintiff's counsel shall prepare the judgment file, have it certified by defendant's counsel, and file it with the court within 30 days.
 ___________________ J. CUTSUMPAS
CT Page 476